# AFFIDAVIT

1.      I am a Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice since October 2021 and have been employed by the Portage County Sheriff's Office ("PCSO") as a Detective since December 2013. I attended the Mount Union College and graduated with a bachelor's degree of Science in Sociology and a minor in Political Science with a concentration in Criminal Justice. Additionally, I have completed numerous specialized training courses through organizations such as the Ohio High Intensity Drug Trafficking Area ("HIDTA"), Drug Enforcement Administration ("DEA"), Ohio Peace Officers Training Academy ("OPOTA"), Ohio Department of Public Safety ("ODPS"), and private training agencies.

2.      As a TFO, I conduct investigations involving violations of Federal firearms and narcotics laws. During my service as a TFO, I have conducted criminal investigations involving the illegal possession of firearms and narcotics. Often such investigations utilize undercover agents and/or confidential informants. As a TFO, I am authorized to investigate violations of United States laws and to execute search warrants and arrest warrants issued under the authority of the United States.

3.      Because this Affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation for the requested complaint.

## PROBABLE CAUSE

4.      On or about February 18, 2025, deputies with the PCSO went to Benjamin Franklin THOMPSON, III and Carolyn Brown's shared residence located at XXXX Porter Road, Ravenna,

Ohio, to respond to a domestic disturbance. This residence is located in the Northern District of Ohio, Eastern Division.

5. Upon arrival at the residence, deputies were met by THOMPSON's girlfriend, Brown, who explained what had transpired that evening and the fact that THOMPSON pointed a firearm at her during a domestic incident. Brown handed the firearm, a loaded Taurus, Spectrum, .380 caliber semi-automatic pistol with an obliterated serial number to deputies. Deputies located THOMPSON in a detached garage on the property. Upon locating THOMPSON in the detached garage, deputies observed a gun safe and an empty box of ammunition.

6. PCSO Sgt. Gerry Klaczko called and informed me of the incident. I responded to the scene and obtained written consent to search the property. PCSO deputies located the key for the safe inside the residence. Upon opening the safe in the detached garage, law enforcement observed four firearms, expelled shell casings, and a loaded magazine. The firearms seized were:

   a. Hi-Point Firearms, model 995, 9x19 caliber, semi-automatic rifle with a cut stock and an obliterated serial number.

   b. Anderson Manufacturing, model AM-15, multi caliber, semi-automatic rifle, serial number 15039151.

   c. Remington, model 742 Woodmaster, 30-06 caliber, lever action rifle, serial number A7110652

   d. Remington Arms, model 12, .22 caliber, pump action rifle, serial number 721962

7. On February 19, 2025, ATF Special Agents ("S/A") Elizabeth Gardner and Jason Petaccio interviewed THOMPSON at the Portage County Jail. Prior to the interview beginning, THOMPSON was advised of his constitutional rights and agreed to speak with law enforcement. During the interview law enforcement learned the following from THOMPSON:

    a. The firearms were his grandfather's and were a family heirloom and that his family would be upset that the firearms were seized.

    b. THOMPSON admitted that his DNA would on the firearms.

    c. THOMPSON stated both he and Brown are prohibited from possessing firearms so the safe was kept in the garage.

    d. The firearms are his nephew's, Donnie Thompson, who resides in West Virgina, however comes to Ohio to use the firearms to hunt.

    e. THOMPSON admitted to currently being on probation from Summit County for Improper Handling of a Firearm in a Motor Vehicle and Trafficking in Marijuana.

    f. THOMPSON acknowledged he had a prior federal conviction but stated he was not currently on any supervision for that case.

8. In a review of THOMPSON's computerized criminal history (CCH), THOMPSON has the following criminal convictions:

    a. On or about February 9, 2001, THOMPSON was convicted of grand larceny in Franklin County, Virginia and was sentenced to probation.

    b. On or about February 9, 2001, THOMPSON was convicted of grand larceny in Franklin County, Virginia and was sentenced to ten years imprisonment with seven years suspended.

    c. On or about February 9, 2001, THOMPSON was convicted of grand larceny in Franklin County, Virginia and was sentenced to ten years imprisonment

    d. On or about January 31, 2005, THOMPSON was convicted of resisting arrest in Roanoke City, Virginia and was sentenced to probation.

e. On or about March 18, 2005, THOMPSON was convicted of probation violation in Franklin County, Virginia and was sentenced to five years imprisonment

f. Counterfeiting of Obligations or Securities of United States in violation United States Code of 18 U.S.C. Section 471, Uttering Counterfeit Obligations or Securities in violation of United States Code 18 U.S.C. Section 472, Dealing in Counterfeit Obligations or Securities in violation of United States Code 18 U.S.C. Section 473, Possession of Counterfeit Plates in violation of United States Code 18 U.S.C. Section 474 on or about December 27, 2010, in case number 5:10CR00319, in the United States District Court, Northern District of Ohio. THOMPSON was sentenced to 30 months Bureau of Prisons.

g. On or about August 29, 2013, THOMPSON was convicted of forgery/uttering (F5), obstructing official business (M1), and petty theft (M1) in the Summit County Court of Common Pleas and was sentenced to probation.

h. On or about April 13, 2023, THOMPSON was convicted of trafficking in marijuana (F5), improperly handling firearm in a motor vehicle (F4), and menacing (M1) in the Summit County Court of Common Pleas and was sentenced to two years probation.

i. THOMPSON was present for his sentencing and therefore knew he had a prior felony conviction.

9. I consulted with an interstate nexus expert with the ATF who opined that the firearms and ammunition recovered from THOMPSON's garage on February 18, 2025, were not manufactured or originally assembled in the state of Ohio and had therefore traveled in and affected interstate and/or foreign commerce. Additionally, S/A Jason Petaccio measured the

length of the Hi-Point Firearms, model 995, 9x19 caliber, semi-automatic rifle and it measured 22 15/16" long. I am aware through training and experience that the overall length of a rifle has to be no less than 26 inches long to not be considered a short barrel rifle, therefore possessing the rifle described above would require THOMPSON to have the firearm registered as an NFA item. Lastly, due to THOMPSON's prior convictions he would not be able to obtain the proper registration let alone possess a firearm.

## CONCLUSION

10. Based upon the above listed facts and circumstances, there is probable cause to believe that on February 18, 2025, Benjamin Franklin THOMPSON, III violated Title 26, United States Code § 5861(h), that is Receipt or Possession NFA Firearm with an obliterated/altered serial number.

_____
Eric Centa, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to via telephone after submission by reliable electronic means. Fed. R. Crim. P. 4.1 and 41(d)(3) this <u>20th</u> day of February, 2025.

_____
Honorable Amanda M. Knapp
United States Magistrate Judge
Northern District of Ohio
Eastern Division